618 A.2d 1087

**Kathleen P. HAWK and Steve F. Uhlman and Mary Beth Uhlman, his wife,**

v.

**ZONING HEARING BOARD OF BUTLER TOWNSHIP and Bell Atlantic Mobile Systems, Inc., and Butler Township.**

**Appeal of BELL ATLANTIC MOBILE SYSTEMS, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 22, 1992.

Decided Dec. 2, 1992.

Rehearing Denied Jan. 19, 1993.

50

William R. Sittig, Jr., for appellant.

Robert F. Hawk, Timothy F. McCune and Leo M. Stepanian, for appellees.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Bell Atlantic Mobile Systems, Inc. (Bell Atlantic) appeals from the order of the Court of Common Pleas of Butler County that reversed the Zoning Hearing Board of Butler Township's (ZHB) grant of a special exception to Bell Atlantic. We reverse.

Bell Atlantic filed an application with the ZHB to construct a public utility installation on a parcel of property zoned R–1 residential in Butler Township. Specifically, Bell Atlantic requested approval to construct a communications tower and to remove an existing tower located on the property.[1] The Butler Township zoning ordinance (zoning ordinance) provides in Section 5.02 that a "public utility installation" is permitted as a special exception in the R–1 residential district.

At the hearing before the ZHB, Bell Atlantic presented evidence which established that the proposed public utility installation met the special exception criteria as set forth in the zoning ordinance. Kathleen P. Hawk and Steve and Mary Beth Uhlman (protestants) did not challenge Bell Atlantic's compliance with the specific zoning ordinance criteria for a public utility installation special exception, but focused solely on the potential adverse health effects.

The ZHB, after considering all of the evidence, made the following pertinent findings of fact:

21. Bell Atlantic established through evidence presented at the hearings that it is a common carrier which:

(a) Serves all members of the public upon reasonable request;

(b) Modifies or discontinues its service only with the approval of the Federal Communications Commission which regulates its activities;

1. The application indicated that the proposed tower would be placed in the same location on the property as the existing communications tower. In response to concerns expressed by residents, Bell Atlantic amended the application to relocate the proposed tower as far away from the neighboring residences as technically feasible.

(c) Provides service to an indefinite public which has a legal right to demand and receive its services with no discrimination allowed.

22. Bell Atlantic is not regulated by the Pennsylvania Public Utility Commission (hereinafter 'PUC') because the FCC is charged with regulating its activities.

23. Bell Atlantic is a private business organization performing some public service and subject to special regulations of the FCC and its services are paid for directly by the recipients thereof.

\* \* \* \*

25. Based on the evidence presented, the proposed tower will not endanger the public health, safety or welfare if located where proposed and developed.

26. The proposed tower will not create conditions which will tend to generate nuisance conditions such as noise, dust, glare or vibration.

27. The location and character of the proposed tower will be in harmony with the area in which it is to be located and in general conformity with the comprehensive plan for Butler Township.

28. The proposed tower will not be inimical to the public interest.

29. The proposed tower will not endanger the public health, safety or welfare in that:

(a) The tower is designed to withstand extreme wind, ice loading and earthquake conditions;

(b) It is adequately grounded and is not likely to be structurally damaged by lightning nor will the proposed tower increase the chance that surrounding properties will be struck by lightning;

(c) No noise, dust or vibrations shall be generated by the proposed tower;

(d) The lighting of the proposed tower is controlled by the Federal Aviation Administration and will not adversely impact surrounding properties;

(e) Radio frequencies transmitted by the proposed tower are controlled by the FCC and have not been shown to

cause any health affects at the proposed power and frequency levels.

(R. 454a–456a). The ZHB granted Bell Atlantic's request for special exception, placing ten conditions on the approval, including limitations on the total number of antennas and the maximum output of all transmitter wattage.

The protestants filed an appeal with the trial court and Bell Atlantic and Butler Township properly intervened in the appeal. Without taking additional evidence, the trial court held that Bell Atlantic met the requirements for a special exception in the R–1 residential district as set forth in the zoning ordinance. The trial court went on to state that once Bell Atlantic met these requirements, the burden shifted to the protestants to prove that the proposed tower would endanger the public health, safety or welfare of the community. The trial court held that the facts and conclusions as found by the ZHB were fully supported by the record and nothing in the record established that the proposed tower would endanger the public health, safety or welfare.

Erroneously, the trial court did not stop there. It proceeded to hold that Section 619 of the Pennsylvania Municipalities Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10619, requires that the Pennsylvania Public Utility Commission (PUC) determine first whether the proposed tower was "reasonably necessary for the convenience or welfare of the public." (469a). Thus, the trial court concluded that if Bell Atlantic obtains formal approval from the PUC that it would affirm the grant of the special exception; however, if the PUC fails to approve the proposed tower, it would sustain the appeal.

Bell Atlantic filed a motion for reconsideration, noting that the PUC lacked jurisdiction over mobile domestic cellular radio telecommunication services (mobile services) under Section 102(2) of the Public Utility Code, 66 Pa.C.S. § 102(2). The trial court revised its opinion, recognizing that Bell Atlantic's business is not within the jurisdiction of the PUC; however, it still sustained the appeal, holding that Bell Atlantic cannot be granted a special exception for a public utility

installation in Butler Township because it does not fit the definition of a "public utility" under the Public Utility Code.

■ On appeal,[2] Bell Atlantic argues that the trial court erred as a matter of law in holding that the ZHB lacked authority to grant the special exception. Bell Atlantic does not claim that it is exempt from the zoning requirements pursuant to Section 619 of the MPC, 53 P.S. § 10619,[3] but asserts that it was not required to apply to the PUC for the subject facility because the legislature has determined that mobile services are not subject to the jurisdiction of the PUC.

Section 102(2) of the Public Utility Code, 66 Pa.C.S. § 102(2), provides:

the term 'public utility' does not include: (iv) Any person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunications service.

■ While this scenario appears to be a Catch–22 situation, an entity can be considered a public utility for zoning purposes without being subject to the jurisdiction of the PUC. In *MCI, Inc. v. Zoning Hearing Board*, 35 Lehigh 200 (1973), the trial court held that MCI, a corporation authorized by the Federal Communication Commission (FCC) to operate as a common carrier microwave communication system, is a public utility for zoning purposes, despite the fact that MCI is not a public utility within the meaning of the Public Utility Code. We accepted the holding of *MCI* in *Public Utility Commission v. WVCH Communications, Inc.*, 23 Pa.Commonwealth Ct. 292,

---

2. Since the trial court did not take additional evidence, our scope of review is limited to determining whether the zoning board committed a manifest abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). We may conclude the Board abused its discretion only if its findings are not supported by substantial evidence. *Id.*

3. Section 619 of the MPC states:

[Article IV, Zoning] shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

351 A.2d 328 (1976). Here, Bell Atlantic's mobile services have been legislatively designated as non-public utilities under the PUC law but were found by the ZHB to fit the definition of "public utility installation" in the zoning ordinance.

■ The term "public utility" as defined in Section 3.48 of the zoning ordinance is a:

> private business organization performing some public service and subject to special governmental regulations ... the services ... of which are paid for directly by the recipients thereof. Such services shall include, but are not limited to, water supply, electric power, gas and transportation for persons and freight.

Because Bell Atlantic served the public and is regulated by the FCC, the ZHB correctly found that Bell Atlantic was a public utility for purposes of the zoning ordinance. Therefore, we hold the trial court erred in holding that Bell Atlantic must receive approval from the PUC to be classified as a public utility for zoning purposes.

■ Next, Bell Atlantic argues that the trial court erred in holding that the ZHB abused its discretion in granting this special exception. A public utility installation is permitted as a special exception in the R–1 residential district. (24a). The power to grant a special exception is vested in the local zoning hearing board. *Heck v. Zoning Hearing Board of Harvey's Lake Borough*, 39 Pa.Commonwealth Ct. 570, 397 A.2d 15 (1979). A special exception is not an exception to a zoning ordinance but is a use permitted conditionally, one which is stated in the zoning ordinance "to be granted or denied by the board pursuant to express standards and criteria. . . ." Section 912.1 of the MPC, 53 P.S. § 10912.1.

The standards for granting a special exception in Butler Township are set forth in Section 702(D) of the zoning ordinance. Subparagraph 4 states that the ZHB:

> [s]hall make findings of fact and state its reasons for granting the special exception, said findings to include:
> a. That the use will not endanger the public health or safety if located where proposed and developed and that the

use will not allow conditions which will tend to generate nuisance conditions such as noise, dust, glare, vibration;

b. That the use meets all required conditions and specifications set forth in the district where it proposes to locate; and

c. That the location and character of the use, if developed according to the plan as submitted and approved, will be in harmony with the area in which it is to be located and in general conformity with the comprehensive plan for Butler Township.

There is no dispute that the proposed tower meets all the specific requirements under the zoning ordinance. However, where protestants raise claims relating to the general detrimental effect or violation of general policy concerns, the protestants have both the burden of persuasion and the duty to go forward with evidence. *Bray v. Zoning Hearing Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1989). Neither the ZHB nor the trial court were persuaded by the allegations raised by the protestants concerning the proposed tower's detrimental effect on the community. The ZHB and the trial court accepted Bell Atlantic's medical evidence that the proposed tower would not endanger the public health, safety or welfare.[4] We are bound by the findings which are based upon substantial evidence.

Accordingly, we reverse.

## ORDER

AND NOW, this 2nd day of December, 1992, the order of the Court of Common Pleas of Butler County in the above-captioned matter is hereby reversed.

4. The protestants argue that Bell Atlantic did not establish that it had standing as a party to apply for the special exception pursuant to Section 913.3 of the MPC, 53 P.S. § 10913.3. The trial court did not specifically address protestant's challenge to Bell Atlantic's standing, but went directly to the merits of this case. Therefore, we hold that the trial court implicitly found that Bell Atlantic had standing in this case. *See generally Commonwealth v. Tharp,* 525 Pa. 94, 575 A.2d 557 (1990); *Erie County Tax Claim Bureau v. Trussel,* 102 Pa.Commonwealth Ct. 32, 517 A.2d 221 (1986).