The **HERNLEY FAMILY TRUST; Donald E. Johnson and Paula M. Johnson, husband and wife; Paul Conrad and Nancy Conrad, husband and wife; and Elizabeth Shirer, Appellants,**

v.

**FAYETTE COUNTY ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1998.

Decided Dec. 24, 1998.

James S. Lederach, Scottdale, for appellants.

Wayne H. Port, Uniontown, for appellee.

Before PELLEGRINI, J., KELLEY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue before this Court is whether a publicly-owned natural gas producer is entitled to construct a "public service facility" as a "utility" by special exception on land zoned agricultural/rural.

The Hernley family trust, Donald E. and Paula M. Johnson, Paul and Nancy Conrad and Elizabeth Shirer (Appellants) appeal from the order of the Court of Common Pleas of Fayette County that affirmed the grant by the Fayette County Zoning Hearing Board (ZHB) of a special exception to Lomak Operating Company (Lomak) to construct a natural gas compressor on property adjacent to Appellants' land. We reverse.

Appellants own land separated by Jacobs Creek from property owned by Ralph A. and Delane A. Rumbaugh (Rumbaugh) on which Lomak has proposed to construct a natural gas compressor. The Rumbaugh land is zoned A-1, agricultural/rural. Rumbaugh and Lomak petitioned the ZHB for a special exception to construct the compressor to op-

erate the site as a "public service facility," as defined in Section 201 of the Fayette County Zoning Ordinance (Ordinance). Appellants protested the petition for a special exception characterizing their property as a quiet and bucolic setting and hearings were held before the ZHB.

At those hearings, representatives of Lomak testified concerning the nature of its business operations. According to that testimony, Lomak, a publicly-owned corporation, is in the business of natural gas production. (Zoning Hearing Board transcript, at 13, R.R. at 8a). Lomak operates numerous natural gas wells in both Westmoreland and Fayette Counties in the vicinity of the compressor site. (R.R. at 9a–10a). The compressor site will allow Lomak to pressurize the natural gas it produces locally for interstate transportation by common carrier pipeline. (R.R. at 13a). Lomak chose to locate the compressor on the Rumbaugh property because of the property's proximity to its well site and a Texas eastern pipeline. (R.R. at 12a–14a). Because it is only a producer, Lomak will not offer the natural gas for sale to the public in the vicinity of the compressor or anywhere else. (R.R. at 31a–32a). As a producer of natural gas rather than a provider of natural gas services, Lomak is not subject to regulation by either the Pennsylvania Public Utility Commission or the Federal Energy Regulatory Commission. (R.R. at 29a–30a).

As the purpose of the compressor is to pressurize natural gas, the process of pressurization for transportation heats the gas and thus, it must be cooled by machinery, which operates like a large automobile radiator to remove the excess heat. (R.R. at 41a–42a). The compressor itself produces significant exhaust noise; however, Appellants object more strongly to the sound generated by the cooling unit's 12–foot diameter fan. The compressor site would run constantly, 24 hours-a-day, 7 days-a-week, 365 days-per-year. (R.R. at 36a–37a).

At the hearing, Appellants introduced the testimony of Steven Roth, a professional acoustic and mechanical engineer. Lomak presented the testimony of two acoustic ex-

perts concerning the noise emission of the proposed compressor. Following the testimony, the ZHB granted Lomak's special exception with conditions to limit the noise emissions. Appellants appealed the ZHB's grant of the special exception to common pleas court. Without taking additional evidence, the trial court affirmed the ZHB's decision.

On appeal to this Court,[1] Appellants argue that the ZHB erred as a matter of law in granting the special exception because Lomak is not a public utility who is entitled to such exception. In the alternative, Appellants argue that the conditions placed upon Lomak by the ZHB were overly vague and incapable of enforcement.

Lomak petitioned for a special exception pursuant to Section 602.4(a) of the Ordinance to build and operate the compressor site as a "public service facility." Whether Lomak's proposed use falls within that category is a question of law and thus, subject to our review. Section 201 of the Ordinance defines "public service facility" as follows:

> The erection, construction, alteration, operation or maintenance of buildings, power plants or substations, water treatment plants or pumping stations, sewage disposal or pumping plants or other similar public service structures by a utility, . . . including the furnishing of electrical, gas, communication, water supply and sewage disposal services.

In order to qualify for this special exception, therefore, Lomak must be a "utility" within the definition of "public service facility." However, the Ordinance does not define "utility."

To interpret the Ordinance, "words . . . shall be construed . . . according to their common and approved usages [and] technical words . . . [which] have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appro-

priate meaning or definition." *See* 1 Pa.C.S. §1903. If a zoning ordinance does not define a term, the word must be given its usual and ordinary meaning; if a court needs to define a term in a zoning ordinance, it may consult the definitions found in statutes, regulations or dictionaries for guidance. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (Pa.Cmwlth.1991). An ordinance must be construed, if possible, to give effect to all of its provisions. *Glendon Energy Co. v. Borough of Glendon*, 656 A.2d 150 (Pa. Cmwlth.1995). Therefore, it is appropriate to construe any given word or phrase with due regard to its context, and to harmonize, if possible, the language under consideration with all other parts of the ordinance. *Berk v. Township of Whitehall*, 16 Pa.Cmwlth. 48, 328 A.2d 927 (Pa.Cmwlth.1974).

Appellants direct this Court to the definition of "public utility" in Black's Law Dictionary, which states that "[t]he test for determining if a concern is a public utility is whether it has held itself out as ready, able and willing to serve the public." *Black's Law Dictionary*, 1232 (6th Ed.1990). This characterization of "utility" in terms of "service to the public" is consistent with the scheme of zoning established by the Ordinance.

Section 106 of the Ordinance states community development objectives identify the availability of "utility services" as a planning factor and Section 400 of the Ordinance permits "essential services" by right in all use districts. Section 201 defines "essential services" as "[t]he construction . . . by public utilities . . . of gas . . . transmission or distribution systems . . . reasonably necessary for the furnishing of adequate service by such public utilities . . . but not including buildings."[2] Thus, the Ordinance reflects a legislative judgment that "utility service" is an essential component of land use and develop-

---

1. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

2. Buildings used in connection with these "essential services" are permitted in all zoning districts as "public service facilities" but only by special exception pursuant to Section 602.4 of the Ordinance.

ment that should be available in all zoning districts.

Pennsylvania case law likewise considers "public utility" in terms of public service. According to *Pennsylvania Public Utility Commission v. WVCH Communications, Inc.,* 23 Pa.Cmwlth. 292, 351 A.2d 328, 330 (Pa.Cmwlth.1976), "a public utility holds itself out to the public generally and may not refuse any legitimate demand for service...." Likewise, in *Drexelbrook Associates v. Pennsylvania Public Utility Commission,* 418 Pa. 430, 435–36, 212 A.2d 237, 239 (1965), the Court considered an entity a "utility" by determining:

> Whether a person holds himself out expressly or impliedly as engaged in the business of supplying his products or services to the public, as a class, or to any limited portion of it, as contra distinguished from hold themselves out as serving or ready to serve particular individuals.

Finally, the Pennsylvania Public Utility Code's definition of "public utility" expressly excludes "any producer of natural gas, not engaged in distributing such gas directly to the public for compensation." 66 Pa.C.S. §102. Our Supreme Court has adopted the definition of "public utility" for cases where zoning ordinances failed to define the term in *Crown Communications v. Glenfield Borough Zoning Hearing Board,* 550 Pa. 266, 705 A.2d 427 (1997). According to the holding in *Crown,* an entity qualifies as a "public utility" if it meets the following criteria: 1) serves all members of the public upon reasonable request; 2) charges just and reasonable rates subject to review by a regulatory body; 3) files tariffs specifying all of its charges; and 4) modifies or discontinues service with approval of a regulatory agency.

■ The Ordinance here does not define "utility" and thus "utility" must be defined as suggested by *Crown.* Because Lomak provides no service to any indefinite public, no public has a right to demand service from it and Lomak is not subject to any regulatory justification, we hold as a matter of law that

Lomak is not a "utility" and thus, the ZHB lacked legal authority to grant Lomak a special exception to construct and operate a "public service facility." [3]

■ Even if we found Lomak to be a public utility, this Court also holds that the ZHB's order was overly vague and incapable of enforcement because the ZHB failed to give any specifics as to the construction, maintenance and/or enforcement of its conditions. Therefore, we hold that the trial court erred in affirming the ZHB's decision.

Accordingly, we reverse.

### ORDER

AND NOW, this 24th day of December, 1998, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby reversed.

---

**3.** The question of whether the ordinance legally excludes gas compressor sites is not an issue on appeal. Lomak challenged the validity of the Ordinance in its initial petition to the ZHB but failed to pursue this issue at the hearing before the ZHB or before the trial court. This issue has thus been waived. Pa. R.A.P. 302.